THOMAS JARDINE v. JACOB R. CORNELL AND THE PENNSYLVANIA RAILROAD COMPANY.

1. A railroad passenger, who is unprovided with a ticket entitling him to ride, and who refuses to either pay his fare or leave the train, may be forcibly ejected by the agents of the company. If, in so doing, more violence is used than is necessary for that purpose, the company and its agents are liable for damages resulting from such excess of violence.

Jardine v. Cornell.

2. A police officer who, in response to the invitation of the regular agents. of the company, assists in ejecting a passenger, becomes a special agent of the company for that purpose, and is subject to the same rule in regard to excessive violence in executing the regulations of company.

3. If the conduct of a passenger unlawfully persisting in riding in a railroad car is such as to constitute him a disorderly person, a policeman may, by virtue of his office, arrest such disorderly character, notwithstanding the fact that such policeman was originally called in as an agent of the company, and for violence incident to such arrest the company and its agents are not liable.

4. When a city police officer takes by force a disorderly person from the scene of disorder to the police station, such act will be presumed to have been done by virtue of his official character, notwithstanding the fact that prior to such disorderly conduct the officer was in law the agent of the defendant; and for force used in making said arrest the defendants are not liable.

On rule to show cause why a new trial should not be granted, certified from the Union Circuit Court.

Plaintiff purchased at Rahway a ticket consisting of three parts, viz., a ticket from Rahway to Waverly, an admission ticket to the state fair at Waverly, and a return ticket from Waverly to Rahway. The plaintiff was carried to Waverly, and was admitted to the fair grounds. In the evening he returned by train from Waverly, in company with his brother and an employee. Soon after leaving Waverly station the conductor of the defendant's train asked the plaintiff for his ticket, whereupon plaintiff offered him the part of the ticket which entitled him to admission to the fair grounds. The conductor refused to receive this ticket, and told plaintiff that he must pay a fare or leave the train, which the plaintiff refused to do. The train made its regular stop at Elizabeth, and, as it was about leaving that station, the conductor came to plaintiff and demanded that he pay his fare or leave the train, which plaintiff again refused to do. The conductor then summoned from the station platform the city police on duty there. Plaintiff, at this time, was seated next to the window, his brother occupied the half of the same seat next the aisle, and his employee was seated near by. The police

notified plaintiff that he must leave the car, which plaintiff refused to do. An effort was made by the officer to pull him out of his seat, which, as the plaintiff forcibly resisted, proved ineffectual.

At this juncture a general affray arose, during which plaintiff was forcibly removed from the car to the city station-house.

For injuries received in the manner above detailed, plaintiff brought his suit against the conductor and the railroad company. A verdict of $1750 was recovered.

Argued at February Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE and GARRISON.

For the plaintiff, *Cortlandt Parker*.

For the defendant, *Edward T. Green*.

The opinion of the court was delivered by

GARRISON, J. An examination of the plaintiff's case shows that the only act ascribed directly to either of the defendants is that Cornell, the conductor, invoked the aid of the police. This act is significant only as a means of imputing the conduct of the officers to the defendants in this suit. That such a result may be reached is evident from the following well-established principles of law :

The agents of a railroad company have a right to forcibly eject from the train a passenger who, being unprovided with a proper ticket, refuses to pay a fare or to leave the train. *State* v. *Overton*, 4 *Zab.* 435 ; *Carpenter* v. *W. & G. R. R. Co.*, 121 *U. S.* 474. If, in ejecting a passenger, more violence is used than is necessary for that purpose, the company and its agents are liable for damages resulting from such excess of violence. *Steamboat Co.* v. *Brockett*, 121 *U. S.* 637. A police officer, by responding to the invitation of the regular agents of the company, to aid in enforcing its regulations, becomes for that purpose a special agent of the company, and for the conduct of such special agent, within the scope of his

employment, the company is responsible. *Collett* v. *Foster*, 2 *H. & N.* 356; *Bayley* v. *Manchester Ry. Co., L. R.,* 7 C. P. 415; *Burnap* v. *Marsh,* 13 *Ill.* 535.

The application of these uncontroverted legal principles resulted at the trial of this cause in the submission to the jury of the single question of fact—whether the force employed by the police was at any time excessive.

This disposition of the case assumes that the original acceptance by the police of a special agency to aid in enforcing the rules of the defendant company, imparted a persistent color of agency to all their subsequent acts.

Upon the theory on which this case was tried, the test, as to whether the company was responsible or not, was whether the police were called in before or after the breach of the peace. If they came in before the breach of the peace, the jury were told that the defendants were liable, while if they were called in after the breach of the peace, and saw it, then they would be considered to have acted in their official capacity, and no liability would attach to the defendants.

This was substantially the ground for the refusal to non-suit, reserved on that motion and stated in the charge of the court.

This view of the case, it will be observed, assumes the existence of a rule of law to the effect that a peace officer, once having undertaken to act in a capacity which in law constitutes civil agency, cannot, should occasion require, assume and exercise the duties incident to his official character.

The public importance of such a rule of law, if it exists, can scarcely be over-stated. For it is evident that as no public officer has a right to disqualify himself for the performance of his official duties, no policeman or other guardian of the peace could render service to a citizen, no matter how sore the need, unless an actual breach of the peace was in progress or perceptibly imminent.

Conversely, a peace officer who had endeavored to aid an aggrieved or molested citizen in obtaining or defending his rights, would, in the event of subsequent disorder or breach

of the peace, be incapacitated from exercising any of his official duties as a public protector. The adoption of a rule which would expose the defenceless to any annoyance short of actual assault, and disqualify a public officer in proportion to his zeal, is not to be seriously considered. It is perhaps needless to say that I have been unable to find any authority from which such a rule could be deduced.

Unaided by the assumption of such a controlling principle, the facts of plaintiff's case furnish the most ample grounds for denying him the remedy he has invoked.

Judged by his own testimony, and that of his witnesses, his conduct, before the officers were called in, was unlawful in the extreme, while his language and state of mind showed that he lacked nothing but opportunity to become the author of actual disorder. He has himself, upon the witness-stand, told what his attitude was in reference to the proposal to put him off the train. He says that he was prepared to resist it at all hazards, and that it would have required a pointed pistol to compel him to submit. Upon the appearance of the police, and the attempt to enforce the rule, resistance ripened instantly into riot. The plaintiff met the attempt to remove him with like force; his brother and servant interposed and became involved in hand-to-hand encounter with the police, during which blood flowed freely. In the end the plaintiff was forcibly taken by the police to the station-house.

When we consider that the scene of this disorder was a railroad train about leaving a station, on a main line of passenger traffic, conduct more conducive to public discomfort, if not danger, cannot well be conceived.

Upon undisputed facts the plaintiff was a disorderly person. The act of the police in removing the plaintiff from the train to the station-house was a continuous one; it was their duty as officers of the law to do so, and it was not within the scope of their employment in enforcing the regulations of the railroad company. Upon an undisputed state of the facts the question presented is for the court.

Where a police officer takes a disorderly person from the

scene of his disorder to the police station, it will be presumed to have been done in his official character, unless such presumption is repugnant to some rule of law, or is rebutted by the facts of the case.

The facts of the present case, unaided by the assumption that the color of agency inhered to all the acts of the police, present nothing to rebut the presumption of the official character of the arrest.

The case, then, stands thus: Plaintiff has sued for injuries inflicted upon him by the wrongful acts of the defendants at the hands of their private agents; whereas the proof is that his injuries were received by him for his own unlawful acts at the hands of public officers.

The result reached is that the plaintiff should have been nonsuited at the trial, and the Circuit Court should be so advised.