[Civ. No. 389.   First Appellate District.—January 30, 1908.]

## ROBERT ELSER, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROAD COMPANIES—LIABILITY FOR EXPULSION OF PASSENGER—TERMS OF CONTRACT.—Whatever may be the rule in other jurisdictions, it is the rule in this state that a passenger upon a railroad train may stand upon the terms of his contract for passage, and may recover damages for an expulsion contrary thereto.

ID.—SALE OF EXCURSION TICKETS—WAIVER OF IDENTIFICATION OF PASSENGER—WRONGFUL EXPULSION.—Where many excursion tickets were sold to the manager of an excursion train for resale, and across the provisions for the identification of passengers were stamped in large red letters ''Not required,'' and the manager wrote the name of the passenger to whom he sold a ticket on the face thereof, the identification of the passenger was thereby waived, and he may recover actual damages for a wrongful expulsion from such train by the conductor, on the ground that his signature did not conform to that written on the face of the ticket.

ID.—MISTAKEN ACTS BY CONDUCTOR WITHOUT MALICE—REQUESTED ARREST AND IMPRISONMENT—REPUDIATION—ACTUAL DAMAGES ONLY CONSIDERED.—Where the acts of the conductor in expelling the plaintiff and in requesting his arrest and imprisonment on resistance were free from malice and ill-will, and through mistake as to his authority, and on promise to the arresting police officer that he would prefer charges against the plaintiff, and his action in that regard was repudiated by the company, and no charge was preferred against the plaintiff, the action of the conductor in causing the arrest and imprisonment is to be considered as within the apparent scope of his authority, on the question of actual damages; but the company cannot be charged with exemplary dam-

ages for the arrest, which was not expressly authorized nor sanctioned by it.

ID.—EXCESSIVE DAMAGES—REBATE REQUIRED AS CONDITION OF AFFIRM·ANCE.—*Held,* that a verdict for damages in favor of plaintiff in the sum of $4,000 is excessive, and is ground for a new trial, unless plaintiff shall stipulate to release all of the judgment above the sum of $800, in which case the judgment would be ordered modified accordingly and affirmed in that sum.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

O'Neal & Richardson, for Appellant.

Tom C. Thornton, and B. A. Herrington, for Respondent.

KERRIGAN, J.—This is an action to recover damages brought by plaintiff for having been ejected from a passenger train of the defendant. The verdict and judgment were for the plaintiff, and from a judgment and order denying defendant's motion for a new trial this appeal is prosecuted.

It appears from the transcript that in the month of August, 1903, there was to be a pugilistic contest at San Francisco, and that the defendant made a special rate from Los Angeles to that city for all who desired to visit San Francisco at that time. One Harry Stuart conducted an excursion or "prize-fight train" from Los Angeles to San Francisco. The defendant sold Stuart three hundred and forty tickets at a certain rate each, giving him authority to resell them at an advance. These tickets read as follows:

"SOUTHERN PACIFIC COMPANY,
"Special Limited Ticket.

"Good for one continuous first-class passage from
"San Francisco
"to
. "Los Angeles,

"Subject to the following contract and conditions:

"In consideration of the sale of this ticket at a rate less than the regular, full first-class rate, I, the purchaser (whose

signature and personal description appear below), hereby
agree that it will be good for going passage only as indicated
on attached coupon, and that it will not be good for return
passage after the date indicated by the agent's punch marks
in the margin, and that it will be good only for a continuous
trip in each direction; that it is 'not transferable,' and that
I, failing to comply with this agreement, conductors may re-
fuse to accept this ticket, and demand the full regular fare,
which I agree to pay.

"Baggage checked to destination only.

"No stop-over privileges given on this ticket.

"Agents will in no case extend time on this ticket.   If
more than one date be punched it will not be received for
passage by conductors.

"The purchaser agrees to sign his name or otherwise iden-
tify himself whenever called upon so to do by conductors or
agents.

"I hereby agree to all the conditions of the above con-
tract."

The ticket on the margin thereof provided for a· description
of the passenger, such as sex, age, size, color of eyes and
hair, etc., but for the purposes of this occasion those require-
ments were waived, and across that part of the ticket was
stamped in large red letters "Not required."   Stuart was
told by defendant that in reselling the tickets he should ob-
tain the signature of the purchaser on the face of each ticket
before making delivery thereof, but that one person could
sign for his whole family.

The plaintiff desired to attend this contest with his brother
in law, Frank G. Adams, and a lady friend, and commis-
sioned Adams to purchase two tickets for him.   Adams went
to the Del Monte saloon, conducted by Stuart, and purchased
three tickets—one for himself and two for plaintiff.   Stuart
requested Adams to sign each ticket with the name of the
intended user.   He proceeded to do so, and had signed one
with plaintiff's name, another with the name "Mrs. R. H.
Elser" (this ticket being destined for the plaintiff's female
companion), when plaintiff entered the saloon, and there-
upon, at the request of Stuart, he signed the name of Adams
to the ticket intended for that person.

Plaintiff made the journey to San Francisco, and was thereafter returning to Los Angeles on one of defendant's trains, when an inspector of defendant examined his ticket, and requested him to sign his name on a separate piece of paper. Elser complied with this request, and it was then discovered by the inspector, and admitted by Elser, that his name appearing on his ticket had not been written by him. Elser exhibited to the inspector bill-heads bearing his name, but was unable to identify himself to the inspector's satisfaction, and, believing that Elser was not the original purchaser of the ticket, the inspector took it up, and the conductor demanded that Elser either pay the full regular fare or leave the train, which Elser refused to do. In this connection the conductor said to him: "Let's have no trouble. Pay your fare, and the company will adjust the matter satisfactorily later." Elser persisted in his refusal to pay fare or leave the train, whereupon, having arrived at San Jose, the conductor attempted to force him from the train, but being unable to do so, he secured the assistance of two train men. These two men grasped Elser and attempted to eject him, but again Elser resisted, and did so, as he put it, to the best of his ability. What immediately followed is well told by quoting from plaintiff's testimony: "There was considerable of a scuffle there. There were some ladies in the car. . . . Five or six train men and some outsiders participated in the scuffle. The outsiders were not friends of mine. I have no idea how many extra passengers came in. Everything was confusion. Ladies were frightened, some screaming and some crying. It was at this time that Officer Black came in and placed me under arrest. . . ." There is evidence that plaintiff, when told by the conductor that he must pay fare or get off, offered to get off at San Jose, the next station, if given a receipt for his ticket. Several times before his final expulsion he offered to get off if given his ticket or a receipt therefor.

The plaintiff was placed under arrest by a police officer, taken to the city prison at San Jose, and remained in custody until 2 o'clock the next day. Other facts having a bearing on the case will be stated in the course of the opinion.

Under the circumstances of this case the requirement that respondent sign his ticket was waived by the conduct of Stu-

art, and respondent was entitled to transportation on his ticket to Los Angeles. But as respondent had read the contents of his ticket a dozen times, as he said, he must have known that he might.be called upon to sign his name, or otherwise prove his right to travel on the ticket; and as he had not signed it himself, he must have known that his right to transportation thereon was open to question.

Many authorities are cited and quoted from in appellant's brief, to the effect that a passenger must pay a fare wrongfully demanded or leave the train, where he has been negligent in starting without taking every reasonable precaution to secure a proper ticket, or if he has notice of its infirmity; and that under such circumstances he cannot recover for his ejection from the train. (Note, 43 L. R. A. 706; 6 Cyc. 565.) But this is not the rule in California. In this state he may stand upon his right, secured by his contract, and recover damages for expulsion. (*Sloane* v. *Southern Cal. Ry. Co.,* 111 Cal. 668, [44 Pac. 320].)

As just stated, the respondent was entitled to the transportation called for in his ticket, and the appellant company is responsible to him in damages for his unlawful expulsion; but appellant contends that it is not liable for damages caused by respondent's excessive resistance of the efforts of its agents to expel him from the train; that to allow a recovery for such resistance would be to permit him to enhance his own damages. Appellant asserts that some of the damages claimed by respondent, including his arrest and incarceration, were the result of his violent resistance. There is a variety of views in different jurisdictions in this country on the amount of force that a passenger rightfully on a train may use in resisting expulsion. Assuming that the rule stated by appellant is the one that would meet with our approbation were the question presented to us for decision, we are at a loss to see how we could apply it in this case. The question of resistance is not presented to us by the record for determination. It is not raised—assuming that it could have been—by any objection to evidence, nor by any proposed instruction to the jury. In fact, at the request of appellant the court instructed the jury that respondent "was not entitled to any damages sustained by him by reason of any resistance made by him."

Appellant contends that it is not liable for the arrest and subsequent incarceration of the respondent, because, first, it did not authorize such arrest and incarceration; second, it did not ratify such arrest and incarceration; and third, to cause or request respondent's arrest and incarceration was not within the scope of the authority of appellant's servants or agents, or any of them; that the appellant is not liable for the arrest of respondent, because such arrest was made by a police officer for a misdemeanor committed on view.

We think that the evidence, while not strong, supports the conclusion, which the jury must have reached, that the police officer who made the arrest did so at the request of the conductor, and not on his own initiative or solely in his capacity as a police officer. When the officer was first called on to make the arrest, he refused, because "at that time Elser was not creating any particular disturbance," and because the officer "did not feel authorized to arrest him." Subsequently the officer heard the turmoil and confusion in the car, and "from what he heard and saw he was satisfied that there was a disturbance of the peace," and he "entered the car to arrest whoever was responsible for the disturbance," and "on entering the car the conductor said, 'Here is your man. Arrest him.'" The officer, on cross-examination, further said that he arrested the respondent, not on account of what he saw or what he heard, but because the railroad conductor told him to do so; that he arrested him on the promise of the conductor that he (the conductor) would prefer charges against respondent.

We think also that the testimony warrants the conclusion that in ordering the arrest of respondent, the conductor was acting for the company and within his authority. It was the method adopted by the conductor to effect the ejection of plaintiff.

In *Gulf C. & S. F. Ry. Co.* v. *Conder*, 23 Tex. Civ. App. 488, [58 S. W. 59], a passenger was arrested on a mistaken idea that he was the person who had assaulted the conductor, and the company was held liable for his ejection, though the conductor acted contrary to orders not to make the arrest. In that case appellant's counsel asked a charge to the effect that if the plaintiff was entitled to recover, the jury could only find damages for a breach of the contract to carry him

safely to his destination, but could not recover the damages resulting from his imprisonment and detention after the departure of the train. It was insisted that the refusal to give this charge was error, the contention being that the defendant, if liable, was only liable for the wrongful ejection, and not for the imprisonment and detention. The court said: "The evidence shows that the arrest and detention were clearly unlawful, and were caused by the wrongful acts of the conductor; and the imprisonment and detention were the natural and proximate results of the said wrongful acts, and were matters properly to be considered by the jury in reaching a verdict. The charge was properly refused."

And in the case of *Jardine* v. *Cornell*, 50 N. J. L. 485, [14 Atl. 590], it is held that a police officer who, in response to the invitation of the regular agents of the company, assists in ejecting a passenger, becomes a special agent of the company for the purpose.

The verdict was for $4,000, and appellant insists that this is excessive. The court correctly instructed the jury substantially that they had a right to assess damages in full compensation for the injury which plaintiff actually received, but that they had no authority to award in addition damages as a punishment of appellant by way of example or warning for the protection of the public. In our judgment, after carefully considering all the circumstances of this case, the contention of appellant that the damages are greatly disproportionate to the injury suffered must be sustained. The neglect of the respondent to have a ticket free from defects contributed largely to engender the dispute which arose. According to some of his own witnesses, respondent addressed to the conductor, in the presence of women, vile and indecent language. He was the cause of a disturbance of the peace. The wrongful expulsion of him was free from malice or ill-will; the conductor thought he was doing right, although it turned out he was mistaken. No blows were struck, and the respondent suffered no direct physical injury—in fact, no injury except some slight and temporary nervous disturbance. The offense with which he was orally charged by the police officer was not one involving moral turpitude. The conductor was not authorized by any rule of the company to cause

the arrest of the respondent, and the superintendent of the
company at San Francisco, on being apprised of what had
occurred, directed that no charge be placed against the re-
spondent.

In the case of *Tarbell* v. *Central Pac. R. Co.*, 34 Cal. 616,
the court says: ''There is no evidence in the transcript which
has any bearing on the question of damages, except the naked
fact that the plaintiff was put out of the cars at a point ten
or twelve miles from his place of destination, and five miles
from the place of departure.'' A verdict of $500 was held
greatly disproportionate to the injury, and a new trial was
ordered unless the plaintiff would take a judgment for $100.

And in *Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668, [44
Pac. 320], the plaintiff was entitled to transportation, but
she was compelled to leave the train, and she started to walk
to the station from which she had started, a distance of three
miles. She walked part of the way, and was carried the rest
of the way by a passing vehicle. The humiliation of her expul-
sion from the train brought on a recurrence of insomnia and
nervous paroxysms to which she had previously been subject
whenever placed under great mental excitement. In its opin-
ion the court says: ''While the amount of damages that may
be awarded in a case like the present is in the discretion of
the jury, it must be a reasonable and not an unlimited discre-
tion, and must be exercised intelligently and in harmony
with the testimony before them. We think that the jury in
the present case must have been influenced by other consider-
ations than the testimony before them in arriving at the
amount of their verdict.'' Under the evidence in that case
the supreme court considered a verdict of $1,400 excessive,
and ordered a new trial unless the plaintiff should accept
a judgment for $400.

We think in the present case that $4,000 is so out of pro-
portion to the injury as to indicate passion or prejudice or
both on the part of the jury. The judgment and order de-
nying a new trial are reversed unless the respondent shall,
within thirty days after the filing of the *remittitur* in the
superior court, file with the clerk and give to the appellant
a stipulation, remitting from the judgment the sum of $3,200.
If such stipulation be so filed and delivered, the superior

court is directed to amend the judgment in conformity therewith, and thereupon the judgment and order shall be affirmed.

Hall, J., and Cooper, P. J., concurred.