[Civ. No. 1043.   Third Appellate District.—February 14, 1913.]

P. R. CLARE, Respondent, v. NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

CARRIERS—FAILURE OF PASSENGER TO PAY BEFORE ENTERING TRAIN—ADDITIONAL FARE—REPEAL OF STATUTE.—The act of April 1, 1878 (Stats. 1877–78, p. 969), authorizing a railway company, where a passenger has not paid his fare before entering the train, to collect "the sum of ten cents in all cases where such fare is less than one dollar, and at the rate of ten per cent on all fares in excess of one dollar," was repealed by section 43 of the act of March 19, 1909 (Stats. 1909, p. 499), providing for the organization of the state railroad commission.

ID.—DEMAND OF ADDITIONAL FARE—EJECTION OF PASSENGER—INSTRUCTIONS.—In an action against a railway company by a passenger for being ejected from a train for refusing to pay ten cents in addition to the regular fare of thirty-five cents for failure to purchase a ticket before taking the train, an instruction that a passenger "who has not

paid his fare before entering the train, if he has been afforded an opportunity to do so, must, upon demand, pay ten per cent in addition to the regular fare," is not prejudicial to the defendant, when there is no controversy as to the amount of excess fare charged but as to the right to demand any excess at all.

ID.—EJECTMENT OF PASSENGER FROM TRAIN—MEASURE OF DAMAGES.—A judgment for one thousand dollars in favor of a passenger wrongfully ejected from a train between stations is not excessive, where he was in an enfeebled condition from a recent surgical operation, and as a result of walking back to a station through the hot sun he was rendered ill for several weeks and incapacitated from performing his ordinary work for a period of seven months.

ID.—DUTY OF EJECTED PASSENGER TO MINIMIZE DAMAGE—INSTRUCTIONS. In such action an instruction to the jury that "if you shall find that plaintiff had been informed of the probable consequences of over-excitement or over-exertion, or heat, or dust, or had been warned against any of these, but nevertheless so conducted himself after his leaving the train as to expose himself to these or any of them and that any consequent damage was the direct result of such exposure, your verdict must be for the defendant," is properly refused as ignoring the question, What would a reasonably prudent man do under the circumstances?

ID.—DUTY OF EJECTED PASSENGER TO WAIT AT NEAREST STATION.—In such an action it is proper to refuse an instruction that the ejected passenger must wait at the station nearest the place of ejectment if he again intends to board another train; if he walks to a station some seventeen hundred feet more distant than the one nearest to the point where he was ejected, it is for the jury to say whether, in so doing, he acted as a reasonably cautious man.

ID.—DEGREE OF CARE REQUIRED OF PASSENGER EXPELLED FROM TRAIN.— The very highest degree of care and caution is not required of a passenger ejected from a train, in deciding whether he will walk through the heat and dust to a station, and whether, if he decides to walk to a station, he will go to the nearest one; it is sufficient if he uses such prudent care as is reasonable under the circumstances.

ID.—RIGHT OF PASSENGER TO INSIST UPON RIGHTS—EXTRA FARE DEMANDED.—The law recognizes the right of a passenger, from whom the carrier demands an extra ten cents for transportation, obstinately to insist upon his legal rights, and does not require him to yield, although he might thereby save himself and others great discomfort and annoyance.

APPEAL from a judgment of the Superior Court of Marin County and from an order denying a new trial. Thos. J. Lennon, Judge.

The facts are stated in the opinion of the court.

Jesse W. Lilienthal, Albert Raymond, and Lilienthal, McKinstry & Raymond, for Appellant.

J. J. Mazza, and T. L. Dreher, for Respondent.

BURNETT, J.—From a judgment based upon a verdict by a jury in favor of plaintiff for damages in the sum of one thousand dollars and from an order denying its motion for a new trial, defendant has appealed.

It apears from the complaint that, on the thirtieth day of May, 1909, plaintiff applied at defendant's ticket office in Corte Madera, a station in Marin County, for the purchase of a ticket to San Francisco, but the office was closed and the agent could not be found. Plaintiff was compelled, therefore, to board the train without a ticket. Shortly thereafter defendant's trainman demanded of plaintiff his fare and he thereupon paid the sum of thirty-five cents, which was the regular charge between the two points. The trainman, however, demanded the further sum of ten cents as an additional charge for the omission to purchase a ticket before entering the train. Plaintiff refused to pay any additional sum, stating to defendant's agent the reason, as before indicated, why he failed to secure a ticket. Thereupon he was ejected from the train. Although no violence was used, it is claimed that from the illegal expulsion he sustained serious injury, the elements of which are set out in the complaint.

Appellant finds fault with the action of the court in giving the following instruction: "A passenger upon a railroad train who has not paid his fare before entering the train, if he has been afforded an opportunity to do so, must, upon demand, pay ten per cent in addition to the regular rate." It is not disputed that this is the language of section 2189 of the Civil Code, but the contention is that, as to the fare under one dollar, it was repealed by section 15 of "An act to create the office of Commissioner of Transportation," etc., approved April 1, 1878, [Stats. 1877–78, p. 969], authorizing the company to collect "the sum of ten cents in all cases

where such fare is less than one dollar, and at the rate of ten per cent on all fares in excess of one dollar.''

But, conceding this point to be well taken, it can be of no avail, since the said act of 1878 was expressly repealed by section 43 of the act of March 19, 1909 (Stats. 1909, p. 499), entitled, ''An act providing for the organization of the Railroad Commission of the state of California,'' etc.   The result is, apparently, that no authority existed at the time in question for any excess charge.   The instruction, therefore, was favorable to appellant.

Aside from this, however, appellant could have suffered no prejudice, since there was no controversy between the parties as to the amount of the excess charge.   Respondent's contention was that he should not be required, and according to his testimony he refused, to pay *any* excess, while appellant's showing was to the effect that none was demanded. No issue was raised as to whether appellant had a right to demand ten cents or ten per cent extra charge.   Indeed, under the admission of appellant that ''the station agent was away, and that the station was closed between twelve and half past twelve, and that the agent was away until after 12:18 when that train left,'' it is clear that appellant had no legal right to demand *any* excess fare and the instruction, if erroneous, constituted mere abstract error.

There seems to be no substantial merit in the contention of a variance between the pleadings and the proof.   Appellant's statement is: ''While the complaint is based alone on an ejection following an alleged refusal of the conductor relative to a *single trip* ticket, the testimony shows that this demand by plaintiff was never presssed, or insisted upon; that all his insistence was for a round trip ticket and that he was expelled because the conductor refused to sell him a round trip ticket.''

As to this appellant is in error.   The cause of action was grounded upon the allegation that ''defendant's servants and agents wrongfully . . . expelled and ejected the plaintiff from said train.''   That was the ultimate fact to which said testimony was addressed and it was a favor to appellant that respondent offered to purchase a round trip ticket.

Neither is it fair to say that he abandoned his purpose to purchase a single ticket.   Viewing the testimony, as the law

requires of us, we must conclude that respondent conceded to appellant the privilege of selling him either a single or a round trip ticket, but that the offer was rejected and his expulsion followed.

Ordinarily, a verdict for one thousand dollars as damages for expulsion from a train without the use of any violence would be considered excessive, although, admittedly, in many cases, the question as to the amount justified by the evidence is open to a contrariety of judicial opinion.

In *Elser* v. *Southern Pacific Co.,* 7 Cal. App. 493, [94 Pac. 852], it was held that a verdict for four thousand dollars in favor of a plaintiff who had been ejected from a train was excessive and it was the opinion of the district court of appeal of the first district that it should be reduced to eight hundred dollars, as plaintiff suffered no direct physical injury except some slight and temporary nervous disturbance. The case manifestly called for this reduction by the appellate court.

In *Turner* v. *North Beach & M. R. R. Co.,* 34 Cal. 594, a verdict for seven hundred and fifty dollars was held not warranted for the reason that "there was no proof in the cause that the plaintiff had suffered any appreciable damage in her person or estate."

In *Gorman* v. *South Pacific Co.,* 97 Cal. 1, [33 Am. St. Rep. 157, 31 Pac. 1112], it was held that a verdict for five hundred dollars was not excessive where it appeared that the conductor used unnecessary violence and insult which caused mental suffering and humiliation upon the part of the passenger.

In *Cox* v. *Los Angeles Terminal Ry.,* 109 Cal. 100, [41 Pac. 794], a verdict for five hundred dollars was held excessive on the ground that there was no appreciable damage and the evidence showed that "the conductor was civil and gentle in his intercourse with plaintiff."

The supreme court's action in reducing the verdict from one thousand four hundred dollars, to four hundred dollars, in *Sloane* v. *Southern Cal. Ry. Co.,* 111 Cal. 668, [32 L. R. A. 193, 44 Pac. 320], is not so easily justified, but there is force in the contention that, since plaintiff there suffered no direct physical injury and the effect upon her nervous condition was only of brief duration, the jury, in arriving at the amount of

their verdict must have been influenced by other considerations than the testimony before them.

Each case, of course, is characterized by its own peculiar facts.

Here the plaintiff had recently submitted to a surgical operation for tonsilitis and was in a somewhat enfeebled condition, and, as a result of the walk back to Corte Madera through the hot sun, the jury were justified in concluding that he was rendered ill and confined to his bed for several weeks and incapacitated from performing his ordinary work for a period of seven months. According to plaintiff's testimony, his business was sacrificed in consequence of his enforced inattention to it and he is corroborated as to his subsequent physical condition by his physician who was called to attend him in the evening after his expulsion from the train.

We see no necessity for quoting the testimony, but, giving it full credit, it seems idle to contend that a verdict for one thousand dollars is excessive.

The fourth point made by appellant is, we think, also without substantial merit. There is no doubt of the soundness of the declared proposition that it was the duty of plaintiff to minimize, as far as he could, the effect of the expulsion, and that he was not entitled to recover "for the result of any injuries he knowingly brought upon himself." It is therefore claimed that the court erred in refusing certain instructions proposed by appellant in line with these principles.

One of these proposed instructions was as follows: "If you shall find that plaintiff had been informed of the probable consequences of over-excitement or over-exertion, or heat, or dust, or had been warned against any of these, but nevertheless so conducted himself after his leaving the train as to expose himself to these or any of them and that any consequent damage was the direct result of such exposure, your verdict must be for the defendant."

It is clear that therein the law was not correctly stated. The instruction ignored the established standard of conduct, that is, What would a reasonably prudent man do under the circumstances? There is no doubt that the plaintiff, after leaving the train, "exposed himself" in the manner implied in said instruction and that the consequent damage was in a

sense the result of such exposure, but it was for the jury to determine whether legally the proximate cause of the injury was the act of defendant in expelling plaintiff from the train or any unreasonable conduct of plaintiff himself.

If the instruction has been based upon the hypothesis that the plaintiff *unreasonably* exposed himself a different question would be presented.

A similar criticism may be made of most of the other proposed instructions that were refused. One required a verdict for the defendant if the jury should find that it "was *possible* for plaintiff to have avoided any of the consequences" of his conduct after leaving the car. Another imposed upon plaintiff the duty "to use *every* effort to lessen the effects of his being expelled from the train."

The propriety of the ruling as to these cannot be questioned.

One other, however, seems to invite specific attention. It is this: "Even though a railroad improperly eject a passenger, the ejected passenger must wait at the station nearest his ejectment, if he again intends to board a train, and must do no other acts that are likely in the mind of a reasonable man to increase any injury resulting from such expulsion or cause any injury that would not otherwise occur. And if the passenger does not take all such reasonable precautions, the railroad is not liable for any resulting injury."

The latter portion of the instruction, beginning "and must do no other acts," embodies a correct statement of the law and if it had been proposed alone no doubt the court would have given it. We do not understand, however, that it was the absolute duty of plaintiff to wait at the nearest station for another train. That station was about three hundred feet from the point where he was ejected, but he walked back to Corte Madera, about one thousand seven hundred feet further.

Plaintiff's explanation was as follows: "Well, I was in a predicament that day that I did not know where I was at. I had just been put off your train for not having a ticket. My mind was not cleared up. I thought I knew something about railroading, but when they put me off, I was up in the air. I did not know but that if I got on at Chapman station they would again refuse to take me, or not." It may be re-

marked that Chapman was simply a flag station and therefore he could not secure a ticket there. Under the circumstances we think it was a question for the jury whether he acted as a reasonably cautious person in going back to Corte Madera.

"The very highest degree of care and caution is not required of the expelled traveler. It is sufficient if he use such prudent care as is reasonable under the circumstances." *(Blain* v. *Southern Pacific R. R. Co.,* 65 Cal. 626, [4 Pac. 672].)

In this respect the case is not unlike that feature of the Sloane case, considered as follows: "The court properly left to the jury to determine whether Mrs. Sloane exercised reasonable prudence in undertaking the walk from East Riverside to Colton, and, if so, that the injury sustained by her was a proper element of damage to be recovered. It could not say as matter of law, or instruct the jury, that under the evidence before them such walk was or was not necessary, or whether the route selected by her was the most feasible; nor could it have been justified in directing them not to allow compensation for any injury sustained by the walk upon the ground that if she had waited a few hours she would have gone upon the cars."

While the attention of the jury was not specifically directed to the question whether the plaintiff acted as a reasonable person in going as he did to Corte Madera, this is chargeable to appellant in not requesting such an instruction.

Besides, this phase of the case was sufficiently covered by the instructions given which emphasized the duty of plaintiff to show that his injuries resulted from the expulsion from the train and were not occasioned by his own fault. The cases cited by appellant in this connection are so unlike this as not to require specific notice.

Appellant charges respondent's misfortune to his own obstinacy. Obstinate he was, no doubt, and he would have saved himself a lot of trouble if he had paid the extra ten cents and reported the matter to the higher officials of the company.

But the law recognizes the right of the citizen to *obstinately* insist upon his legal demands and does not require him to yield in what may seem of trifling importance, although

he might thereby save himself and others great discomfort and annoyance.

Some other questions are incidentally discussed but we find no prejudicial error and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 14, 1913.