[No. A067166. First Dist., Div. Five. Nov. 22, 1994.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
BRIDGET G. COLBERT, Real Party in Interest.

**COUNSEL**

Louise H. Renne, City Attorney, Patrick J. Mahoney, Chief Deputy City Attorney, Matthew D. Davis and Christopher C. Moscone, Deputy City Attorneys, for Petitioner.

No appearance for Respondent.

James L. Sims for Real Party in Interest.

**OPINION**

**THE COURT.**[1]—The City and County of San Francisco (City) seeks a writ of mandate to compel respondent superior court to grant its motion for summary judgment. City is defendant in a personal injury action brought by real party in interest Bridget Colbert, who was stabbed while riding on a City-operated bus and now sues City for failing to prevent the incident. City contends it is not liable to real party because the stabbing was sudden and without warning. We agree and issue the writ.

Despite real party's contention to the contrary, the facts are not in dispute. Real party boarded a City bus shortly after 10 p.m. She sat a few seats behind the driver. At a subsequent bus stop a man boarded the bus and took a seat somewhere behind real party. This man has only been described as a Black male wearing "dirty" or "soiled" clothing. There was nothing about his behavior or his appearance to raise any suspicion; neither real party nor the driver noticed anything unusual about him. Shortly thereafter the driver

---

[1]Before Peterson, P. J., King, J., and Haning, J.

glanced in his mirror and saw the man open a small pocket knife. According to the driver's declaration in support of City's motion for summary judgment, the man suddenly—less than five seconds later—began stabbing real party. The driver did not have time to react in any way. Until the man opened his knife, there was no warning or cause for alarm, such as a warning shout from a passenger, to put the driver on notice of an attack. The man then fled the bus. Real party did not effectively dispute the driver's version of the incident.

■ Real party's complaint alleges that City was negligent for failing to prevent the stabbing. City moved for summary judgment, arguing that it could not be found negligent for failing to prevent an attack which occurred without warning. The trial court denied City's motion.

Any liability of City for failing to prevent the assault would stem from its duty of care as a common carrier to protect the safety of its passengers. ■ The controlling law in this area is Civil Code section 2100 and *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 [221 Cal.Rptr. 840, 710 P.2d 907] (*Lopez*). Section 2100 provides that a common carrier "must use the utmost care and diligence for [the] safe carriage [of its passengers], must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." The *Lopez* court construed this duty as "requir[ing a common carrier] to do all that human care, vigilance, and foresight reasonably can do under the circumstances. [Citation.]" (40 Cal.3d at p. 785.) This duty includes protecting passengers from assaults by others, including fellow passengers. (*Id.* at pp. 785-786; see also *De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 793 [225 Cal.Rptr. 789].)

"Common carriers are not, however, insurers of their passengers' safety. Rather, the degree of care and diligence which they must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of the business of the carrier. [Citations.]" (*Lopez, supra,* 40 Cal.3d at pp. 785-786.) Perhaps for this reason, the duty to protect passengers from assault lies only when the common carrier knows or should know that an assault is about to occur. The *Lopez* court cited with approval *Terrell* v. *Key System* (1945) 69 Cal.App.2d 682, 686-688 [159 P.2d 704], in which a train operator was held liable for one passenger's assault upon another only because the train conductor had " 'notice of . . . boisterous and vituperative conduct of . . . drunken crap shooters' " and failed to take steps to prevent the situation from escalating to

physical assault. (*Lopez, supra*, 40 Cal.3d at p. 786, quoting *Terrell, supra*, 69 Cal.App.2d at p. 688.)

 No California case has held a common carrier liable for a sudden assault which occurs with no warning. Such liability would literally require an armed presence on every common carrier, which is precisely what *Lopez* decried: "Finding such a duty [to protect passengers from assault] to exist is not the functional equivalent of finding a duty to provide an armed security guard on every bus. There are a number of actions a carrier might take short of placing an armed guard on each bus which, in a given case, might be sufficient to meet the duty imposed by Civil Code section 2100. For instance, where the disorderly conduct of certain passengers threatens the safety of others, the bus driver . . . might warn the unruly passengers to quiet down or get off the bus [citations]; alert the police and summon their assistance [citations]; or, if necessary, eject the unruly passengers [citation]." (40 Cal.3d at p. 787.) At least one California court has noted, albeit in dictum, that there is no duty to prevent criminal assailants from boarding buses in the first place. (*Taeleifi* v. *Southern Cal. Rapid Transit Dist.* (1982) 130 Cal.App.3d 366, 369 [181 Cal.Rptr. 697], overruled on other grounds in *Lopez, supra*, 40 Cal.3d at p. 787, fn. 4.)

The trial court denied summary judgment because of a triable issue of fact whether the driver had or should have had warning of the attack. However, no such dispute exists: The evidence shows the attack came without warning. The trial court also referred to some slight evidence of two prior assaults in the past year on the same bus line. This evidence, adduced without specific factual underpinning, is insufficient to put City on notice that this particular assault was to take place. The simple fact of two prior assaults at best could make a stronger case that City's drivers should respond to incidents of unruly passengers; the prior assaults cannot impose liability for a sudden and unheralded attack.

 We reach these conclusions after full briefing by the parties and after informing them we might proceed by issuing a peremptory writ in the first instance. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) We use the "accelerated *Palma* procedure . . . [because] petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue" by issuance of an alternative writ and oral argument. (*Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961].)

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its order denying City's motion for summary judgment, and to enter a new and different order granting the motion.