Filed 10/19/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JING HUANG,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>THE BICYCLE CASINO, INC.,<br><br>  Defendant and Respondent. | B266350<br><br>(Los Angeles County<br>Super. Ct. No. BC511867) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Howard L. Halm, Judge.  Reversed.

Steinbrecher and Associates and Edward Steinbrecher for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester LLP, Jeffrey M. Lenkov, Zubin Farinpour, and Mae G. Alberto, for Defendant and Respondent.

Jing Huang was injured boarding a shuttle bus provided by Bicycle Casino, Inc. (Bicycle Casino or the casino), which transported passengers from Monterey Park to Bicycle Casino in Bell Gardens. Huang sued Bicycle Casino for negligence. The trial court granted Bicycle Casino's motion for summary judgment. We reverse.

## FACTS AND PROCEDURE

Huang alleged Bicycle Casino was a common carrier and had a duty and responsibility to ensure the safety and security of its patrons who took the shuttle bus. Bicycle Casino allegedly knew or should have known of the dangers associated with patrons boarding the shuttle bus and was negligent in failing to provide a safe passageway for its patrons to enter the shuttle.

The relevant facts reflected in the parties' separate statements of undisputed material facts are as follows. According to the Asian Games Manager at Bicycle Casino, the casino operated a free shuttle service for a select group of people to whom it disbursed advertisements. The shuttle picked up passengers at certain restaurants and other landmarks on public streets and took them to Bicycle Casino to gamble.

The shuttle picked up passengers in Monterey Park on Garvey Street. It had been picking up passengers at that location since March 2012. The shuttle held 45 people, including the driver. There were no shuttle stop signs. The shuttle driver typically stood at the top of the steps of the bus, and the waiting passengers would "crowd" onto the shuttle. The driver collected players cards that Bicycle Casino issued. Huang filled out paperwork to receive the card, but she did not pay any money for it. The shuttle passengers had access to special promotions like gambling chips and free lunches when they arrived at Bicycle

Casino, where a casino host would return their players cards as they disembarked the shuttle. This was the purpose of checking their players cards when they boarded the shuttle. But individuals could board the shuttle if they did not have a players card. In this event, the shuttle driver would ask for their identification.

On October 22, 2012, at around 1:00 p.m., Huang was waiting for the Bicycle Casino shuttle along with a crowd of others. One witness estimated approximately 40 to 50 people were waiting, while another estimated 60 to 70. The shuttle was supposed to pick up passengers at 1:15 p.m. The next pick up time was 2:15 p.m. When the shuttle arrived, it stopped approximately 20 to 30 meters from where the group was standing. The waiting crowd ran toward the shuttle, and Huang rushed to the shuttle with everyone else. Approximately 20 people had already boarded the shuttle at the time Huang tried to board. Another person in the waiting crowed described the scene as "complete disorder" and "chaos." Huang was on the left side of the shuttle entrance, and with her left hand on the handrail, she put her right foot on the first step. The crowd on the right side surged, and she was pushed and fell. But according to the shuttle driver, "[e]verybody else lined up," and Huang cut in line. Paramedics took Huang to the hospital, where she had an X-ray. She had a broken bone in her left hip that required surgery the next day.

This was not the first instance in which a waiting crowd rushed the shuttle and pushed or shoved to board—it happened "all the time." The 1:15 p.m. pickup time was popular. It also was not the first time there were more people waiting than there were seats on the shuttle, and the scene became "chaotic."

Bicycle Casino had not given the shuttle driver any written policies or procedures to follow in operating the shuttle, nor did it give him any training in operating the shuttle. But the driver had more than 10 years' experience in driving buses, including for other casinos, and he had driven larger casino shuttles before.

When the driver first started driving the shuttle, he had a casino host accompanying him on the shuttle. The host would exit the shuttle and help the passengers line up and board. The host had the driver tell the waiting passengers in Chinese that the shuttle would not leave until they formed a line. After approximately half a month, the casino host stopped accompanying the driver regularly, though the driver would occasionally ask the host to accompany him when he saw the passengers becoming disorderly. The host told the shuttle drivers to make sure the waiting passengers formed a line before they even opened the door because he had seen people shoving each other from "[t]he very first." There was no Bicycle Casino host on the shuttle on the day in question, solely a driver.

Prior to Huang's incident, Bicycle Casino had never received a report of an injury on or in connection with its shuttle service. Huang never saw anyone fall, push, or shove others to get on the shuttle, prior to her incident.

Huang proffered the expert witness declaration of Augustine Zemba, who had testified in more than 600 depositions involving bus-related issues and testified in more than 80 court trials. He had more than 50 years' experience managing and operating large bus fleets. Zemba opined that Bicycle Casino was operating the shuttle as a common carrier. He further opined that Bicycle Casino was negligent in that it failed to properly train its bus drivers on the safe and orderly boarding of

passengers and have established, written safe-boarding procedures. He also concluded that it was foreseeable a passenger trying to board the shuttle under the circumstances of this case would be pushed, shoved, or bumped and fall. Bicycle Casino should have had a host or second person from the casino assisting the driver and passengers in safely boarding the bus. According to Zemba, this host should have made sure that the door to the shuttle remained closed until the passengers lined up several feet from the door to board one at a time. Bicycle Casino also should have provided a regular bus stop so that passengers knew where to wait, and it should have stopped the shuttle there instead of 30 meters away, causing a rush to the shuttle.

Bicycle Casino objected to Zemba's entire declaration and to specific statements in it. It objected to the entire declaration on the grounds that it lacked foundation, Zemba lacked personal knowledge, he failed to state the basis for his opinion, and he had no experience or expertise in casino shuttle buses. Among other things, it also objected to the statements that Bicycle Casino was a common carrier; that it was foreseeable a passenger trying to board the shuttle under the circumstances of this case would be pushed, shoved, or bumped and fall; and that Bicycle Casino was negligent in failing to provide a host on the shuttle.

The court granted Bicycle Casino's motion for summary judgment and sustained all objections to Zemba's declaration. It held Bicycle Casino was not a common carrier and owed only a duty of ordinary care to the shuttle passengers. But the scope of the ordinary duty of care did not extend to protecting Huang from being bumped by other passengers as she boarded the shuttle. In light of the ruling on duty, the court declined to address Bicycle

5

Casino's additional argument that Huang could not prove causation.

The court entered judgment for Bicycle Casino, and Huang timely appealed.

## STANDARD OF REVIEW

The trial court shall grant a motion for summary judgment if all the papers show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  The defendant moving for summary judgment has the burden of establishing either (1) one or more elements of the plaintiff's causes of action cannot be established or (2) a complete affirmative defense to the causes of action exists.  (Code Civ. Proc., § 437c, subds. (*o*)(1), (2), (p)(2).)  To demonstrate the elements of a cause of action cannot be established, the defendant may show the plaintiff does not possess evidence needed to support a prima facie case and cannot reasonably obtain the needed evidence.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.)  The defendant may also, but need not, present evidence conclusively negating an element of the cause of action.  (*Ibid.*)  Once the defendant has met its initial burden, the burden shifts to the plaintiff to produce evidence showing a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal from summary judgment, we review the record de novo and must independently determine whether triable issues of material fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We resolve any evidentiary doubts or ambiguities and view all inferences from the evidence in the light most favorable to the party opposing summary judgment.

6

(*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 843; *Saelzler v. Advanced Group 400, supra*, at p. 768.)

## DISCUSSION

The elements of a negligence cause of action are a legal duty, a breach of the legal duty, proximate or legal cause, and a resulting injury. (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594.) In this case, Huang alleged Bicycle Casino was a common carrier, a type of entity that owes a heightened duty of care to its passengers under certain circumstances. Bicycle Casino argued it was not a common carrier and thus owed only a duty of ordinary care to its shuttle passengers. But even then, Bicycle Casino asserted the scope of the duty of ordinary care did not extend to preventing the harm Huang suffered.

We address the common carrier issue first and then turn to the scope of the duty of ordinary care. We conclude the court erred in holding Bicycle Casino was *not* a common carrier as a matter of law, as there is a triable issue of material fact on the point. We further conclude that, even if the casino were a private carrier owing only a duty of ordinary care, there was no basis for establishing a "no duty" rule in this case.

### 1. *Common Carrier*

A common carrier of persons includes "[e]veryone who offers to the public to carry persons." (Civ. Code, § 2168.) The Civil Code treats common carriers differently depending on whether they act gratuitously or for reward. (*Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1130 (*Gomez*).) "A carrier of persons without reward must use ordinary care and diligence for their safe carriage." (Civ. Code, § 2096.) But "[c]arriers of persons for reward have long been subject to a heightened duty of

7

care." (*Gomez, supra*, at p. 1128.) Such carriers "must use the utmost care and diligence for [passengers'] safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (Civ. Code, § 2100; accord *Gomez, supra*, at p. 1130.) While these carriers are not insurers of their passengers' safety, "[t]his standard of care requires common carriers 'to do all that human care, vigilance, and foresight reasonably can do under the circumstances.' " (*Squaw Valley Ski Corp. v. Superior Court* (1992) 2 Cal.App.4th 1499, 1507 (*Squaw Valley*).)

Whether a party is a common carrier for reward may be decided as a matter of law when the material facts are not in dispute. (*Squaw Valley, supra*, 2 Cal.App.4th at p. 1506.) When the material facts are disputed, it is a question of fact for the jury. (*Gradus v. Hanson Aviation, Inc.* (1984) 158 Cal.App.3d 1038, 1048-1049 (*Gradus*); see CACI No. 901 ["Status of Common Carrier Disputed"].)

Factors bearing on a party's common carrier status include: (1) whether the party maintained an established place of business for the purpose of transporting passengers; (2) whether the party engaged in transportation as a regular business and not as a casual or occasional undertaking; (3) whether the party advertised its transportation services to the general public; and (4) whether the party charged standard rates for its service. (*Gradus, supra*, 158 Cal.App.3d at p. 1048; CACI No. 901.) The party need not have a regular schedule or a fixed route to be a common carrier, nor need the party have a transportation license. (*Gradus, supra*, at p. 1048; CACI No. 901.)

Not all these factors need be present for the party to be a common carrier subject to the heightened duty of care. (See

8

CACI No. 901 (2016 ed.) Sources and Authority, p. 546 ["Note that these factors may not be applicable in all cases."].) For instance, "[i]t is now well established that commercial operators of elevators and escalators" may be common carriers for reward (*Gomez, supra*, 35 Cal.4th at p. 1131), even though stores do not maintain an established place of business solely for purposes of transporting escalator or elevator passengers. And "[a]lthough a store does not charge for use of its elevators or escalators, it profits from the utilization of these devices to assist customers in shopping at the store." (*Squaw Valley, supra*, 2 Cal.App.4th at p. 1508.) In other words, the "reward" contemplated by the statutory scheme need not be a fee charged for the transportation service. (*Champagne v. A. Hamburger & Sons, Inc.* (1915) 169 Cal. 683, 692 ["Reward does not necessarily import that there must be a fare paid for carriage . . . ."].) The reward may be the profit generated indirectly by easing customers' way through the carriers' premises. (*Treadwell v. Whittier* (1889) 80 Cal. 574, 592.)

Also, "the 'public' does not mean everyone all of the time; naturally, passengers are restricted by the type of transportation the carrier affords. [Citations.] 'One may be a common carrier though the nature of the service rendered is sufficiently specialized as to be of possible use to only a fraction of the total population.' [Citation.] To be a common carrier, the entity merely must be of the character that members of the general public may, if they choose, avail themselves of it." (*Squaw Valley, supra*, 2 Cal.App.4th at pp. 1509-1510.) "Hence, a common carrier [for reward] is any entity which holds itself out to the public generally and indifferently to transport goods or persons from place to place for profit." (*Id.* at p. 1508.)

9

Applying these principles, we hold there is a triable issue of material fact on whether the Bicycle Casino shuttle was a common carrier. The shuttle was for reward in the same sense that department stores offer escalators or elevators for reward. Bicycle Casino reaped reward from the shuttle by transporting passengers to its premises, where they disembarked, gambled, and lost money to the casino. As to whether the casino held the shuttle out generally and indifferently to the public, Bicycle Casino's Asian Games Manager declared that it sent the advertisements for the shuttle to a select group of people. But there was no further evidence about how the casino selected this group, or evidence showing that it was, in fact, a small group. Even if the advertisements targeted a particular sector of the public, evidence demonstrated the casino offered the shuttle indiscriminately to the public in the sense that anyone wishing to go to its premises could board the shuttle. The shuttle stopped on public streets. Passengers could show the driver a players card to board *or* any other form of identification, if they did not have a players card. At the very least, there was a triable issue on whether Bicycle Casino held the shuttle out to the public generally and indifferently, and the casino was not entitled to summary adjudication on the common carrier issue.

Bicycle Casino relies on the fact that it does not maintain an established place of business solely for transporting passengers, but neither do department stores and ski resorts, and yet courts have found their escalators, elevators, and ski lifts to be common carriers for reward. (*Champagne v. A. Hamburger & Sons, Inc., supra*, 169 Cal. at pp. 692-693; *Squaw Valley, supra*, 2 Cal.App.4th at p. 1508.) It is not dispositive that the casino's primary business is something other than transportation. What

10

ultimately matters is whether the casino indiscriminately offered the shuttle to the public and whether it offered the shuttle for reward.[1]

Bicycle Casino's moving papers attempted to demonstrate that its *duty of ordinary care* did not extend to preventing the harm Huang suffered. But it never attempted to demonstrate that, assuming it was a common carrier, *the duty of utmost care and diligence* did not extend to preventing Huang's harm. We may reverse the summary judgment for Bicycle Casino on this basis alone.

## 2. *Scope of Duty of Ordinary Care*

The trial court held Bicycle Casino was subject to a duty of ordinary care and had no such duty to prevent Huang's injury in this case, as a matter of law. Even if we assume for the sake of argument that Bicycle Casino was not a common carrier, and therefore the duty of ordinary care applied here, we would decline

---

[1] Huang argues the court erred in sustaining Bicycle Casino's objection to the entirety of her expert witness declaration. She does not address the specific objection that the court sustained to Zemba's opinion that Bicycle Casino was acting as a common carrier (on the ground of "[i]mproper legal opinion by a non-lawyer"). We need not decide whether the court erred in sustaining the objections to Zemba's declaration because there is no prejudice. Our analysis does not rely on Zemba's declaration, but on the facts adduced from deposition transcripts, percipient witness declarations, and other documentary evidence the parties submitted with their briefing below. Thus, even without considering Zemba's declaration, a triable issue of material fact existed.

11

to find an exemption from the duty of ordinary care as a matter of law.

"California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.  (Civ. Code, § 1714, subd. (a).)"  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 768 (*Cabral*).)  "Whether a given case falls within an exception to this general rule, or whether a duty of care exists in a given circumstance, 'is a question of law to be determined on a case-by-case basis.' " (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 (*Parsons*).)  This is true whether we arrive at a no-duty holding or a holding merely limiting the scope of the duty.  (*Cabral, supra*, at p. 773.)

"Duty is not an immutable fact, but rather an expression of policy considerations leading to the legal conclusion that a plaintiff is entitled to a defendant's protection."  (*Ludwig v. City of San Diego* (1998) 65 Cal.App.4th 1105, 1110.)  In the absence of a statute establishing an exception to the duty of ordinary care, "courts should create one only where 'clearly supported by public policy.' "  (*Cabral, supra*, 51 Cal.4th at p. 771.)

The primary factor in the duty analysis is foreseeability. (*Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 366 (*Pedeferri*).)  We evaluate foreseeability "at a relatively broad level of factual generality."  (*Cabral, supra*, 51 Cal.4th at p. 772.) Thus, our task " 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct . . . .  [Instead, we must] evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed [on the negligent party].' "

12

(*Ibid*.)  Foreseeability involves three considerations:  " 'the [general] foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered.' " (*Parsons*, *supra*, 15 Cal.4th at p. 473; see *Pedeferri, supra*, at p. 367.)

Foreseeability, while the primary factor, is not the end of the duty analysis.  (*Pedeferri, supra*, 216 Cal.App.4th at p. 368.) "The next step is to assess whether other public policies militate against a duty notwithstanding the general foreseeability of the harm."  (*Ibid*.)  These factors include " 'the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Parsons*, *supra*, 15 Cal.4th at p. 473.)  Like foreseeability, we evaluate these factors at a broad level of generality, and ask "not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by [these] clear considerations of policy." (*Cabral, supra*, 51 Cal.4th at p. 772.)

Our consideration of foreseeability and the other public policy factors at a general and categorical level is important, as explained by our Supreme Court in *Cabral*: "By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no

13

duty of ordinary care, which is for the *court* to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the *jury* to make." (*Cabral, supra*, 51 Cal.4th at p. 772.) This is why the court deciding duty assesses foreseeability from the general category of negligent conduct at issue. (*Id.* at p. 773.) When the court decides the defendant owed the plaintiff a duty of ordinary care, the jury then considers the case-specific foreseeability of the plaintiff's injury in assessing whether the defendant breached the duty of ordinary care. (*Ibid.*) An approach in which the court focuses its duty inquiry on case-specific facts "would tend to 'eliminate the role of the jury in negligence cases, transforming the question of whether a defendant breached the duty of care under the facts of a particular case into a legal issue to be decided by the court . . . .'" (*Ibid.*) In short, the legal question of whether to make an exception to the general duty of ordinary care, "so that the defendant *owed no duty* to the plaintiff, or owed only a limited duty, is to be made on a more general basis suitable to the formulation of a legal rule, in most cases preserving for the jury the fact-specific question of whether or not the defendant acted reasonably under the circumstances." (*Ibid.*)[2]

---

[2]     *Cabral* noted that California is in accord with the Restatement, which explains: " 'No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases.' [Citation.] '. . . When no such categorical considerations apply and reasonable minds could differ about the competing risks and burdens or the foreseeability of the risks in a specific case, . . . courts should not use duty and no-duty determinations to substitute their evaluation for that of the factfinder.' "

14

Here, our first step must be to articulate the duty at issue. (*Pedeferri, supra*, 216 Cal.App.4th at p. 365.) Bicycle Casino appears to acknowledge that it generally had a duty of ordinary care to its passengers. It asserts, however, that it did not have a duty to designate a bus stop (so as to avoid a stampede because the passengers waited far from where the shuttle stopped), or to have a casino host or security personnel on board. Bicycle Casino's articulation of duty is based too closely on the case-specific facts. We will instead frame the issue as whether a shuttle operator owes its passengers a duty to exercise ordinary care in deciding where and how to board passengers. (See, e.g., *Cabral, supra*, 51 Cal.4th at p. 774 [framing the duty issue as "whether a freeway driver owes other drivers a duty of ordinary care in choosing whether, where and how to stop on the side of the road"]; *Pedeferri, supra*, at p. 366 [framing the duty issue as "whether a commercial vendor owes a duty of care to persons on or near the roadways who are injured as a result of the vendor's negligence in loading and securing cargo in a vehicle in a way that distracts the vehicle's driver"].) We consider foreseeability first and then the other public policy factors.

**a. Foreseeability Considerations**

To reiterate, we consider " 'the [general] foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the

---

(*Cabral, supra*, 51 Cal.4th at p. 773, fn. 3, quoting Rest.3d Torts, Liability for Physical and Emotional Harm, § 7, coms. a, i., pp. 78, 82.)

15

defendant's conduct and the injury suffered.' " (*Parsons*, *supra*, 15 Cal.4th at pp. 472-473.)

We may generally foresee that a shuttle operator's failure to try to direct or control the boarding of a large group (the general category of negligent conduct at issue) could result in the passengers jockeying for positions, jostling each other, and pushing or shoving each other. This is especially the case when the shuttle clearly is too small to hold all members of the waiting group. It is further foreseeable that passengers pushing or shoving to board first might knock someone to the ground, either intentionally or negligently—the type of harm that occurred here. "This chain of foreseeability is both short and direct." (*Pedeferri, supra*, 216 Cal.App.4th at p. 367.) Therefore, the connection between the shuttle operator's failure to try to direct the boarding of a large group and the type of injury suffered by Huang is not too attenuated, remote, or unexpected. (*Cabral, supra*, 51 Cal.4th at p. 779 ["[T]he question of 'the closeness of the connection between the defendant's conduct and the injury suffered' [citation] is strongly related to the question of foreseeability itself."].) It is also certain on this record that Huang suffered injury.

Bicycle Casino contends Huang's injury was not foreseeable because the casino had no prior reports of an injury suffered in this manner, and Huang herself testified that she never saw anyone fall while trying to board the shuttle. These kind of case-specific facts might play into the trier of fact's decision on breach of duty or causation, but they should not be the basis for a categorical no-duty rule here. (*Cabral, supra*, 51 Cal.4th at p. 777 [rejecting the defendant's contention that case-specific circumstances made the plaintiff's injury unforeseeable for

16

purposes of the duty analysis, and noting that the case-specific circumstances "probably played a role in the jury's decision to assign" the defendant a minimal share of responsibility for the collision, "but they do not show lack of foreseeability for the entire *category* of negligent conduct at issue here"].)

We must distinguish between the separate questions of whether a duty exists and whether the casino breached that duty by the failure to use the care that a reasonable person would under the circumstances.[3] "[T]he question of foreseeability in a 'duty' context is a limited one for the court, and readily contrasted with the fact-specific foreseeability questions bearing on negligence (breach of duty) and proximate causation posed to the jury or trier of fact." (*Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 507.) In the sense of foreseeability pertinent to duty, we focus on the general character of the event at issue and inquire whether it was " ' "likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." ' " (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1273.) That a shuttle bus might not have enough seats for a large group of waiting passengers is likely enough in the setting of modern life that we can deem such an event generally foreseeable, and the scrambling for seats among the passengers likewise foreseeable.

Even if we consider the case-specific facts here, the absence of any actual falls prior to this incident should not be dispositive.

---

[3] In the case of a common carrier, the question for the trier of fact would be whether the casino breached the duty of utmost care and diligence, under the circumstances.

It was sufficient that there had been prior incidents of crowds too large for the shuttle. During these incidents, the scene had devolved into chaos, so much so that the driver had asked the casino host to accompany him when the passengers became disorderly.

Our Supreme Court has cited a number of good reasons for refusing to give dispositive effect to the absence of prior similar incidents when it considered the similar issue of a landowner's duty to protect invitees against the criminal acts of third persons. First, if the absence of any prior similar incidents is dispositive, "the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured parties . . . ." (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 125.) Second, such a rule "leads to arbitrary results and distinctions. [Citation.] [T]here is uncertainty as to how 'similar' the prior incidents must be to satisfy the rule. The rule [also] raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be?" (*Id.* at p. 126.) "Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts," and our Supreme Court "has already rejected that notion. ' "The mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one which might not reasonably have been anticipated." ' " (*Ibid.*) Fourth, and "[f]inally, the 'prior similar incidents' rule improperly removes too many cases from the jury's consideration." (*Ibid.*)

For these reasons, we are not persuaded by Bicycle Casino's reliance on *Porter v. California Jockey Club, Inc.* (1955) 134

Cal.App.2d 158 (*Porter*), in which the court affirmed a judgment of nonsuit for the defendant racetrack owner. The plaintiff was injured when she went to place a bet between races, and a man rushing up the stairway to the betting windows ran into her. (*Id.* at p. 159.) Evidence showed spectators were in the habit of crowding the stairways and running to the betting windows just before each race started. (*Ibid.*) But because there was "no evidence of any prior negligent conduct on the part of even one spectator," the court refused to impose a duty on the racetrack owner "to take steps to guard against such contingency." (*Id.* at p. 160.) The *Porter* court did not have the benefit of our Supreme Court's reasoning as to why the lack of prior similar incidents should not dispose of the question of foreseeability. Moreover, *Porter* did not address the foreseeability and other public policy considerations that go into a duty analysis, other than to say the harm was not foreseeable because no similar incidents had occurred before.

Bicycle Casino also suggests it had no duty here because Huang was injured as a result of the wrongful conduct of third parties (the unidentified passengers who knocked Huang down). Although, "as a general matter, there is no duty to act to protect others from the conduct of third parties" (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235), we impose a duty to take affirmative action to control the wrongful acts of third parties when such conduct may be reasonably anticipated (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 402). In other words, a duty is imposed when such third party conduct was reasonably foreseeable. As we have already discussed, that an overlarge group of passengers might push or shove each other to board was generally foreseeable here. Whether unidentified

19

passengers might be primarily or partially responsible for Huang's injury, or whether she bears some responsibility for it herself, are questions for the trier of fact in considering causation. The argument does not convince us to create a categorical no-duty rule here. (*Cabral, supra*, 51 Cal.4th at p. 777.)

In sum, the foreseeability considerations weigh against the creation of a categorical exception to the duty of ordinary care in this case.

**b. Other Public Policy Considerations**

The remaining policy considerations are " 'the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Parsons*, *supra*, 15 Cal.4th at p. 473.) Along with foreseeability, the extent of the burden to the defendant is the crucial consideration. (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213.)

Here, the extent of the burden on Bicycle Casino weighs against the creation of a no-duty rule; that is to say, our recognition of a duty does not place a necessarily heavy burden on shuttle operators. Bicycle Casino argues imposing a duty to have safety personnel or a host on board is too costly and places too heavy a burden on society. We are not holding that shuttle operators *must* hire safety personnel to ride on shuttles in addition to the driver or provide a casino host for every ride. There are precautionary measures the shuttle operator could take short of these things that would pose little to no financial burden on it. The shuttle driver could simply inform the waiting

20

crowd that no one may board unless they line up in an orderly fashion, as the casino host suggested to the driver in this case, and as the driver had apparently done on previous occasions at the host's direction. Or, notice of such a rule could be posted on the schedule the casino disburses to the targeted group of potential passengers. In the alternative, or in addition, the driver could stop as close as safely possible to large waiting crowds, so there is little or no room for the passengers to run toward the shuttle. Bicycle Casino contends such a measure would not have mattered because Huang was not injured in the run to the shuttle—she was injured as she stepped onto the shuttle stairs. But the 20-30 meter dash to the shuttle door contributed to the excitement of the crowd and made the scene at the stairs more chaotic than it needed to be. There are several inexpensive measures shuttle operators in these situations may take, and we are not suggesting that shuttle operators must take any or all of the measures we have discussed. We are not creating a new duty to have safety personnel present on all shuttles. We are merely deciding whether to create an exception to the general duty of ordinary care that all individuals must exercise in their activities. (*Cabral, supra*, 51 Cal.4th at p. 783 ["The question is not whether a *new duty* should be created, but whether an *exception* to Civil Code section 1714's duty of exercising ordinary care in one's activities, including operation of a motor vehicle, should be created."].)

The other public policy factors also do not support the creation of a no-duty rule here. A shuttle operator who negligently boards a large group of passengers does not act in an especially blameworthy manner, but such conduct is not particularly encouraged or authorized either. (*Cabral, supra*, 51

Cal.4th at p. 782 [noting that the defendant's negligent conduct (stopping a truck alongside a freeway) was "hardly a heinous act, but neither does it receive any special legal protection" in sense that no state or federal law encouraged or authorized it].) Imposing a duty of ordinary care in deciding where and how to board groups of passengers with resulting liability for negligent exercise of that duty would discourage negligence and serve the policy of preventing future harm. (*Pedeferri, supra*, 216 Cal.App.4th at p. 368.)

Overall, we conclude an exception to the duty of ordinary care is not " 'clearly supported by public policy' " (*Cabral, supra*, 51 Cal.4th at p. 781), nor do foreseeability considerations support an exception. We would decline to hold Bicycle Casino had no duty of ordinary care as a matter of law. Accordingly, it was not entitled to summary judgment on this ground.[4]

### 3. *Causation*

The only other ground on which Bicycle Casino moved for summary judgment was a lack of causation as a matter of law. The trial court did not reach this issue, in light of its holding on the lack of duty. We hold Bicycle Casino was not entitled to summary judgment on causation grounds.

---

[4] Huang argues the trial court erred in sustaining Bicycle Casino's objection to the entirety of Zemba's expert witness declaration. As with the common carrier issue, we do not rely on Zemba's declaration (see fn. 1, *ante*), and this is particularly true as to the existence of duty, which is a legal question for the court. Thus, we need not decide whether the court erred in sustaining the objection to his declaration.

22

The casino's argument on this issue consisted of bare assertions that Huang could not prove her injury was caused by the failure to have a guard or other employee stationed on the shuttle, the failure to have a larger shuttle with more seats available, or the driver's stopping the shuttle 30 meters away from the crowd. Similarly, Bicycle Casino's separate statement of undisputed material facts simply stated that Huang lacked evidence each of these things caused a third party patron to bump into her. While it did not rule on the causation issue, the trial court sustained Huang's objections to these statements of fact.

"Proximate cause . . . is generally a question of fact for the jury . . . ." (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 520.) Even if another passenger's pushing and shoving knocked Huang over, Bicycle Casino is not necessarily resolved of liability. "A defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187.) Moreover, a third party's conduct is a superseding force cutting off the defendant's liability only if it was unforeseeable and the injury it caused was unforeseeable under the circumstances of the case. (*Akins v. County of Sonoma* (1967) 67 Cal.2d 185, 199.) Under these principles, Bicycle Casino's motion failed to show that it did not cause Huang's

injury as a matter of law.  There are genuine issues of material fact regarding causation here.

## DISPOSITION

The judgment is reversed.  The trial court shall enter an order denying Bicycle Casino's motion for summary judgment. Huang shall recover costs on appeal.


                                                    FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.