Filed 11/28/22 D.S., A Minor CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| D.S., a Minor, etc.,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>THE LION'S LIMOS, INC.,<br><br>　　　Defendant and Respondent. | B314263<br><br>(Los Angeles County<br>Super. Ct. No. BC698998) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

　　　Artiano & Associates, James Artiano and Lawrence S. Andrews for Plaintiff and Appellant.

　　　Horvitz & Levy, Peder K. Batalden and Andrea L. Russi; Olson Law Group, Sonali Olson and Heather L. Lunn for Defendant and Respondent.

—————————————

D.D. was shot by an unknown assailant as she attended a birthday celebration in a party bus owned and operated by defendant The Lion's Limos, Inc. D.D.'s daughter, plaintiff D.S., brought this wrongful death action. The trial court granted summary judgment in favor of defendant. On appeal, plaintiff argues there was a triable issue of material fact regarding whether the bus driver knowingly parked in front of a group of gang members and allowed the passengers to disembark in their midst. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2017, D.D. was one of 30 passengers who attended a birthday celebration on a party bus operated by defendant. At some point, a passenger requested a restroom stop near the Santa Monica Pier. While the bus was stopped near the pier (with the engine running), an unknown assailant shot at the party bus and killed D.D.

Plaintiff was a minor at the time of her mother's death. On March 21, 2018, plaintiff, through her guardian ad litem, filed a complaint against defendant alleging the driver's negligence caused the wrongful death of her mother. She alleged that, as a common carrier, defendant owed a duty of care to protect passengers' safety. She further alleged the assault was foreseeable, and the driver breached his duty by failing to leave the location or bar entry into or exit from the bus before the attack occurred.

On March 25, 2021, defendant moved for summary judgment. Defendant argued it owed no duty to protect passengers from a third-party assault that occurred without warning, and alternatively there was no breach because the bus driver acted promptly when he saw the gun. Defendant

submitted declarations from the bus driver and the manager of The Lion's Limos in support of its motion. The driver's description of the events that night is largely undisputed. The driver stated the pier was a common destination requested by passengers because it was open at night. He had never seen any violence near the pier, and neither he nor his manager had ever experienced any criminal activity on defendant's party buses.

When he arrived at the pier, the driver stopped behind a black party bus in a space designated for tour bus parking near the pier. He left the engine running. Once stopped, the driver observed a group of men standing by a tree 25 feet away from where he parked.[1] They approached the bus only after the driver had stopped and five passengers—two men and three women—had disembarked. Two of the women immediately left for the restroom. The strangers surrounded the remaining passengers (two men and a woman) and asked them where they were from. One of the male passengers responded that they were just there to have a good time. One of the strangers and one of the male passengers indicated they knew one another.

During this exchange, the driver observed two men run first towards the black bus parked in front and then back toward defendant's bus. One of the men pulled a handgun from his waistband. When the driver saw the gun, he yelled for the three passengers standing outside to get back on the bus. Two of them

_____

[1]    Plaintiff asserts an inference can be made that the men were standing where the bus had stopped and not 25 feet away because plaintiff's witness testified he saw the men at the bus when the driver opened the bus doors for passengers to disembark. Plaintiff argues the inference was reasonable because the entire incident lasted less than three minutes.

made it back on to the bus. Because the driver had not yet turned off the engine, he immediately began to pull away. At the time, five other passengers were standing on the stairwell waiting to exit and one put her arm in the door to prevent it from closing because her boyfriend was still outside. The bus was halfway in the street, but the driver stopped because not all the passengers were on board. The unknown assailant shot at the bus as it was stopped in the street. He killed D.D. and injured other passengers. The record is unclear as to D.D.'s precise location in the bus when she was killed.[2]

The passengers yelled for the bus driver to drive, and he drove to a nearby police station. It was undisputed the party bus was stopped at the pier for three minutes or less. It was also undisputed that less than one minute had elapsed between the time the driver saw the gun and the shooting.

In opposition to summary judgment, plaintiff argued the group of men were obviously dangerous gang members and the bus driver acted negligently by stopping the bus near them. Plaintiff relied on deposition testimony from a passenger who was a close friend of D.D. The witness testified the driver was the only person who could see outside the bus when they arrived at the parking spot because the passenger windows were blacked out. As a result, the driver was the only one who initially would have seen the group of men near the parking spot.

The witness testified he first let other passengers exit the bus before he got off. "I stood up, I turned and I looked out the windshield of the bus, I didn't see anything. When I turned and stepped off the bus, once I stepped off the bus, when I looked

---

[2]     Plaintiff's 2018 complaint alleged the shooter fled the scene on foot and was never apprehended.

straight ahead, I saw a group of gang members who were Bloods." He immediately recognized them as Blood gang members because of their attire (red bandanas, red hats, white T-shirts, etc.). The witness was alarmed by the words exchanged and anticipated there would be trouble. In his opinion, the bus driver was "young enough" to know the men were Bloods.[3]

The court granted summary judgment for defendant. On June 25, 2021, the court entered judgment in defendant's favor. Plaintiff appealed.

## *DISCUSSION*

### 1. *Standard of Review*

We review a summary judgment de novo. (*Huang v. The Bicycle Casino, Inc.* (2016) 4 Cal.App.5th 329, 337 (*Huang*).) The trial court must grant summary judgment if "there is no triable issue as to any material fact" and the "moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) In determining if a triable issue of material fact exists, courts consider the evidence "and all inferences reasonably deducible from the evidence" in the light most favorable to the party opposing summary judgment. (§ 437c, subd. (c); *Aguilar,* at p. 843.)[4]

---

[3] The trial court sustained objections to the witness's assertion that the bus driver knew the men were dangerous gang members on the grounds the evidence was speculation or opinion. On appeal, plaintiff does not challenge the trial court's evidentiary rulings.

[4] All undesignated statutory references are to the Code of Civil Procedure.

5

A defendant moving for summary judgment may meet its burden by showing that "one or more elements of the plaintiff's causes of action cannot be established." (*Huang, supra,* 4 Cal.App.5th at p. 337; § 437c, subd. (p)(2).) To make this showing, the defendant may point out that the plaintiff does not have, and cannot reasonably obtain, the evidence to prove at least one element. (*Aguilar, supra,* 25 Cal.4th at p. 854.) The defendant may also, but is not required to, produce evidence that negates an element of the plaintiff's cause of action. (*Ibid*.)

Once the defendant meets its initial burden, the burden shifts to the plaintiff to show that there is a triable issue of material fact. (*Aguilar, supra,* 25 Cal.4th at p. 849; § 437c, subd. (p)(2).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar,* at p. 845.) A party " 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657.)

## 2. *Negligence Liability for Common Carriers*

" 'The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs.' " (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263, italics omitted.) "The elements of a negligence cause of action are a legal duty, a breach of the legal duty, proximate or legal cause, and a resulting injury." (*Huang, supra,* 4 Cal.App.5th at p. 338.)

Common carriers are subject to a heightened duty of care. (*Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1129; Civ. Code, §§ 2100, 2168.) "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (Civ. Code, § 2100; *Gomez,* at p. 1130.)

"Common carriers are not, however, insurers of their passengers' safety. Rather, the degree of care and diligence which they must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of the business of the carrier." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785 (*Lopez*).) Thus, "a carrier is liable for injuries resulting from an assault by one passenger upon another only where, in the exercise of the required degree of care, the carrier has or should have knowledge from which it may reasonably be apprehended that an assault on a passenger may occur, and has the ability in the exercise of that degree of care to prevent the injury." (*Id*. at p. 791; see also *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235, 240 (*Delgado*) [holding that "an affirmative duty to protect another from the conduct of third parties" arising from a "special relationship" requires "heightened foreseeability" which is "shown by prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location"].) "No California case has held a common carrier liable for a sudden assault which occurs with no warning." (*City and County of San Francisco v. Superior Court* (1994) 31 Cal.App.4th 45, 49 (*San Francisco*); 6 Witkin, Summary of Cal. Law (11th ed. 2022) Torts, § 1063.)

7

In *Lopez, supra*, 40 Cal.3d at pages 784, 796, the trial court sustained a demurrer to a complaint alleging negligence on the part of a transit district.  The plaintiff passengers were injured after a group of juveniles harassed other passengers and instigated a " 'violent argument' " that escalated into a " 'violent physical fight.' " (*Id*. at pp. 784, 791.)  Passengers had notified the bus driver of the altercation before it became violent, and the bus driver knew there had been a history of assaults on the bus route, but "did absolutely nothing to maintain order or protect passengers from injury." (*Id*. at pp. 784, 795-796, italics omitted.)

The Court of Appeal affirmed the sustaining of the demurrer.  The Supreme Court reversed, holding the bus driver had a duty to protect passengers from a foreseeable and preventable assault that could "reasonably be apprehended." (*Lopez, supra,* 40 Cal.3d at p. 791.)  The court posited that "[t]here are a number of actions a carrier might take short of placing an armed guard on each bus which, in a given case, might be sufficient to meet the duty," including warning unruly passengers to calm down, ejecting them, or alerting police and seeking help. (*Ibid*.)  The court found significant that the bus driver was aware of an escalating dispute before it became a violent physical altercation but did nothing. (*Id*. at p. 789.)

By contrast, in *San Francisco, supra*, 31 Cal.App.4th at pages 48–49, the appellate court held liability could not be imposed where the plaintiff was unexpectedly stabbed by another passenger on a public bus.  The trial court denied the city's summary judgment motion, finding a triable issue of fact whether the driver had or should have had warning of the attack due to two prior assaults in the past year on the same bus line.  The Court of Appeal issued a writ of mandate reversing the trial

8

court.  The court found no triable dispute existed:  The evidence showed the attack came without warning; it was undisputed there was nothing about the assailant's behavior or appearance to raise any suspicion when he boarded; he stabbed the victim less than five seconds after the driver saw him open a small pocketknife.  The court reasoned, "The simple fact of two prior assaults at best could make a stronger case that City's drivers should respond to incidents of unruly passengers; the prior assaults cannot impose liability for a sudden and unheralded attack."  (*Id*. at p. 49.)

### 3. *Analysis*

As plaintiff essentially concedes on appeal, there is little factual similarity between the present appeal and the cases the parties cite.  None involves a third-party attack on passengers from outside a common carrier.  Without clear supporting authority, plaintiff argues the trial court erred in granting defendant's summary judgment motion because there was a triable issue of material fact regarding where the group of alleged gang members was located when the driver stopped the bus and the passengers disembarked.  According to plaintiff, the bus driver breached his duty to D.D. and the other passengers when he chose to stop by a group of gang members, who were "an open and obvious danger."  Plaintiff argues a reasonably careful bus driver would have continued driving and parked in a safe location.

Plaintiff has failed to produce evidence that would allow a reasonable trier of fact to find that the driver knew or should have known of the impending violence and had a duty to act on such information.  Plaintiff acknowledges "the shooting itself was sudden" and that *Lopez, San Francisco,* and similar cases hold

9

that a duty to protect passengers from attack does not arise where the attack occurs without warning.

The facts of this case are closer to *San Francisco than they are to* Lopez, where the driver was aware of the violent argument and reasonably understood that a fight was imminent. As in *San Francisco*, where the assailant's "dirty" clothing was insufficient to put the driver on notice of an impending assault, here the mere fact that there was a group of men wearing bandanas and hats some distance from the bus was not enough to make the driver anticipate a shooting. No gang expert testified that under the facts of this case the group of men described by the witness were or were not gang members. Nor was there evidence that a gun or any other weapon was visible to the driver until the shooter pulled the gun from his waistband, so like *San Francisco*, there "was no warning or cause for alarm" until seconds before the attack. (*San Francisco*, *supra*, 31 Cal.App.4th at p. 48.)

Unlike *Lopez*, where the bus driver was aware that a fight was brewing, the evidence here suggests that the interactions between the passengers and the men were ambiguous at best. Even assuming that the bus driver was put on notice that the men were gang members with a propensity for violence when he heard them ask the passengers where they were from, this exchange occurred after the bus stopped and passengers were already disembarking. It is undisputed that less than a minute had passed between the time the driver first saw the gun and the gunshots, and less than three minutes from the time the driver stopped. The evidence here falls far short of the standard established in *Lopez*, where the driver was notified of an increasingly violent altercation, which triggered his duty to

protect his passengers, and he breached his duty of care by doing nothing.[5]

Under *San Francisco* and *Lopez,* liability may not attach from such a "sudden and unheralded attack." Because there is no evidence that the driver was earlier put on notice that an assault might occur, in this case his duty to protect the passengers only arose when he saw the assailant pull a gun. At that point, he acted immediately and with "the utmost care and diligence" by yelling for the passengers to get back on the bus and then driving to a safe location (a police station). (Civ. Code, § 2100.)

Plaintiff attempts to distinguish *Lopez* and *San Francisco* by expanding the time period within which the driver's duty arose. She contends the driver's duty arose even before he stopped, when he observed a group of gang members standing next to the bus, and "the breach occurred when the party bus driver chose to stop his bus and disembark his passenger in front of a large group of gang members." We find no triable issue of fact. First, there is no evidence that the bus driver knowingly chose to stop the bus in front of a group of men. The only evidence was to the contrary, that as he was pulling in he saw some men by a nearby tree. (The driver referred to the group as "Tree Men.") Plaintiff's charge that the driver stopped the bus directly in front of the men was speculative because the

---

[5]     *Lopez* is also distinguishable because there the assault occurred on a moving bus and the court noted that "bus passengers are 'sealed in a moving steel cocoon,' " and are thus "wholly dependent upon the bus driver to summon help or provide a means of escape." (*Lopez, supra*, 40 Cal.3d at p. 789.) Here, the violence arose on a public street while the bus doors were open.

passenger windows had been blacked out and D.D.'s friend testified he remained seated to allow other passengers to disembark before him. By his own testimony, the passenger did not see the men until he stepped off the bus immediately before the shooting.

In any case, "a bus driver will seldom, if ever, recognize a criminal assailant at a glance . . . ." (*Taeleifi v. Southern Cal. Rapid Transit Dist.* (1982) 130 Cal.App.3d 366, 370, disapproved on another ground in *Lopez, supra*, 40 Cal.3d at p. 788, fn. 4; cf. *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1215 [imposing a duty on a landlord only "where gang violence is extraordinarily foreseeable" because broader liability would compel landlords to "make rental decisions according to stereotypes about gang members' ethnicity and appearance"]; *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 501–503 [condominium owners association is potentially liable for injuries caused by third party criminal conduct where the association was aware of past similar crimes occurring on the property and of circumstances making a similar occurrence likely].)[6]

Plaintiff produced no admissible evidence showing that a reasonable bus driver would have anticipated violence when he stopped the bus and before the assailant pulled a gun. Whether

---

[6] Just as in the common carrier cases we discuss, courts holding landowners liable for harm to their tenants require the harm to be foreseeable. Here, there was no evidence that prior acts of violence had taken place against bus passengers or anyone else in the area near the pier, or that the driver had been aware of such attacks. On the contrary, both the driver and his supervisor affirmed they were not aware of any assaults on passengers on their buses or near the pier.

we consider this case from the perspective of legal duty (which defendant argues) or breach of duty (which plaintiff argues) the result is the same. There is no triable issue of fact that the bus driver was aware of an imminent threat when he stopped the bus or that he failed to take appropriate action when he saw the attacker brandish the weapon.

### DISPOSITION

We affirm the judgment. Defendant is awarded its costs on appeal.


RUBIN, P. J.

WE CONCUR:


KIM, J.


TAMZARIAN, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.